IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


HAROLD G. TIMBERS,            )
                             )
                Plaintiff,    )
                             )
vs.                          )        Case No. 06-1387-MLB
                             )
MICHAEL J. ASTRUE,            )
Commissioner of              )
Social Security,             )
                             )
                Defendant.    )
_____)


RECOMMENDATION AND REPORT


     This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits.  The matter has been fully briefed by the
parties and has been referred to this court for a recommendation
and report.

**I.  General legal standards**

     The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's decision
to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the

correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984
(10th Cir. 1994).  Substantial evidence requires more than a
scintilla, but less than a preponderance, and is satisfied by
such evidence that a reasonable mind might accept to support the
conclusion.  The determination of whether substantial evidence
supports the Commissioner's decision is not simply a quantitative
exercise, for evidence is not substantial if it is overwhelmed by
other evidence or if it really constitutes mere conclusion.  Ray
v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court
is not to reweigh the evidence, the findings of the Commissioner
will not be mechanically accepted.  Nor will the findings be
affirmed by isolating facts and labeling them substantial
evidence, as the court must scrutinize the entire record in
determining whether the Commissioner's conclusions are rational.
Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The
court should examine the record as a whole, including whatever in
the record fairly detracts from the weight of the Commissioner's
decision and, on that basis, determine if the substantiality of
the evidence test has been met.  Glenn, 21 F.3d at 984.

     The Social Security Act provides that an individual shall be
determined to be under a disability only if the claimant can
establish that they have a physical or mental impairment expected
to result in death or last for a continuous period of twelve
months which prevents the claimant from engaging in substantial

2

gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not

to be disabled.  If the claimant survives step four, the fifth
and final step requires the agency to consider vocational factors
(the claimant's age, education, and past work experience) and to
determine whether the claimant is capable of performing other
jobs existing in significant numbers in the national economy.
Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of
the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993).
At step five, the burden shifts to the Commissioner to show that
the claimant can perform other work that exists in the national
economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987
F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this
burden if the decision is supported by substantial evidence.
Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will
assess the claimant's residual functional capacity (RFC).  This
RFC assessment is used to evaluate the claim at both step four
and step five.  20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

**II.  History of case**

On July 13, 2006, administrative law judge (ALJ) George M.
Bock issued his decision (R. at 355-364).  Plaintiff alleged that
his disability began January 1, 1979 (R. at 355).  Plaintiff last
met the insured status requirement for disability insurance on
September 30, 1979 (R. at 355).  Thus, the issue before the court

is whether plaintiff was disabled, and therefore entitled to disability insurance benefits, from January 1, 1979 through September 30, 1979.

At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity during the relevant time period (R. at 356-357).  At step two, the ALJ found that plaintiff had severe impairments of left eye blindness, affective disorder, an anxiety-related disorder, and a polysubstance abuse disorder (R. at 358, 359).  At step three, the ALJ determined that plaintiff's impairments, "absent any limitation or restriction imposed by polysubstance use or abuse during that timeframe" did not meet or equal listed impairments 12.04 or 12.06 (R. at 359).

After establishing plaintiff's RFC, the ALJ determined at step four that plaintiff could perform past relevant work as a dance instructor and a recreational vehicle salesperson (R. at 362).  In the alternative, at step five, the ALJ found that plaintiff could perform jobs that exist in significant numbers in the regional and national economy.  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 362).

**III.  Did the ALJ properly analyze the impact of plaintiff's alcohol or drug abuse?**

In his decision, the ALJ stated the following:

Accordingly, the Administrative Law Judge

finds that, during the relevant timeframe at
issue, claimant's affective and
anxiety-related disorders, absent any
limitation or restriction imposed by
polysubstance use or abuse during that
timeframe, did not meet the specific severity
requirements set forth under Sections 12.04
or 12.06.

(R. at 359).  Later in his decision, the ALJ's finding #4 stated

the following:

During the relevant timeframe at issue,
absent limitations imposed by polysubstance
use or abuse, claimant did not have an
impairment or a combination of impairments
listed in or medically equal to one listed in
Appendix 1, Subpart ), Regulation No. 4.

(R. at 362).

In 1996, Congress passed Public Law 104-121.  It added the

following language to 42 U.S.C. § 423(d)(2):

(C) An individual shall not be considered to
be disabled for purposes of this title if
alcoholism or drug addiction would (but for
this subparagraph) be a contributing factor
material to the Commissioner's determination
that the individual is disabled.

20 C.F.R. § 404.1535 and § 416.935 provide further guidance on

this issue.  They state as follows:

(a) *General.*  If we find that you are
disabled and have medical evidence of your
drug addiction or alcoholism, we must
determine whether your drug addiction or
alcoholism is a contributing factor material
to the determination of disability.

(b) *Process we will follow when we have
medical evidence of your drug addiction or
alcoholism.*  (1)The key factor we will
examine in determining whether drug addiction

or alcoholism is a contributing factor
material to the determination of disability
is whether we would still find you disabled
if you stopped using alcohol or drugs.

(2) In making this determination, we will
evaluate which of your current physical and
mental limitations, upon which we based our
current disability determination, would
remain if you stopped using drugs or alcohol
and then determine whether any or all of your
remaining limitations would be disabling.

(i) If we determine that your remaining
limitations would not be disabling, we will
find that your drug addiction or alcoholism
is a contributing factor material to the
determination of disability.

(ii) If we determine that your remaining
limitations are disabling, you are disabled
independent of your drug addiction or
alcoholism and we will find that your drug
addiction or alcoholism is not a contributing
factor material to the determination of
disability.

The implementing regulations make clear that a finding of

disability is a condition precedent to an application of

§423(d)(2)(C).  The Commissioner must first make a determination

that the claimant is disabled.  He must then make a determination

whether the claimant would still be found disabled if he or she

stopped abusing alcohol or drugs.  If so, then the alcohol or

drug use is not a contributing factor material to the finding of

disability.[1]  If however, the claimant's remaining impairments

---

[1]The claimant has the burden of proving that his alcoholism
or drug addiction is not a contributing factor material to his
disability determination.  <u>Ball v. Massanari</u>, 254 F.3d 817, 821
(9th Cir. 2001); <u>Doughty v. Apfel</u>, 245 F.3d 1274, 1279-1280 (11th

would not be disabling without the alcohol or drug abuse, then
the alcohol or drug abuse is a contributing factor material to
the finding of disability.  The ALJ cannot begin to apply
§423(d)(2)(C) properly when he has not yet made a finding of
disability.  Drapeau v. Massanari, 255 F.3d 1211, 1214-1215 (10th
Cir. 2001).  In other words, an ALJ must first conduct the five-
step inquiry without separating out the impact of alcoholism or
drug addiction.  If the ALJ finds that the claimant is not
disabled under the five-step inquiry, then the claimant is not
entitled to benefits and there is no need to proceed with the
analysis under §§ 404.1535 or 416.935.  If the ALJ finds that the
claimant is disabled and there is medical evidence of his or her
drug addiction or alcoholism, then the ALJ should proceed under
§§ 404.1535 or 416.935 to determine if the claimant would still
be found disabled if he or she stopped using alcohol or drugs.
Bustamante v. Massanari, 262 F.3d 949, 955 (9th Cir. 2001).

     The ALJ stated that, absent limitations imposed by
polysubstance use or abuse, plaintiff did not meet or equal a
listed impairment.  The statements by the ALJ do not clearly or
expressly state that the ALJ considers plaintiff to be disabled
without considering his polysubstance use.  However, as Drapeau
makes clear, the Commissioner must first make a determination

_____

Cir. 2001); Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir.
2000); Brown v. Apfel, 192 F.3d 492, 498 (5th Cir. 1999).

8

that the claimant is disabled.  Only then does the Commissioner determine if polysubstance abuse is a contributing factor material to the finding of disability.  The Commissioner cannot apply the statute and regulations properly if the Commissioner has not first made a finding as to whether or not plaintiff is disabled without considering plaintiff's polysubstance abuse. Therefore, this case shall be remanded in order for the ALJ to comply with the applicable statute and regulations on this issue.

## IV.  Did the ALJ err in his RFC analysis?

At step two, the ALJ found that plaintiff had, in addition to left eye blindness, an affective disorder, an anxiety-related disorder, and a polysubstance abuse disorder, that the combination of these impairments imposes more than minimal limitations upon claimant's ability to perform basic work-related activities, and are therefore severe impairments (R. at 359). Basic work activities are "abilities and aptitudes necessary to do most jobs," 20 C.F.R. § 404.1521(b)[416.921(b)], including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgement, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting." Social Security Ruling 85-28, 1985 WL 56856 at *3.  Langley v. Barnhart, 373 F.3d 1116, 1123 (10th Cir.

2004).

At step three, the ALJ found that plaintiff had slight to mild restriction of activities of daily living; slight to mild difficulties in maintaining social functioning; slight to mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation (R. at 359). As the court indicated in <u>Givens v. Astrue</u>, 2007 WL 3046302 at *5 (10th Cir. Oct. 18, 2007), this step three finding creates an odd inconsistency in the ALJ's decision in light of the step two finding that plaintiff had mental impairments that caused more than minimal limitations upon claimant's ability to perform basic work-related activities, and are therefore severe impairments. This is because mild findings in the first three categories and none in the fourth category will generally result in a finding that plaintiff did not have a severe mental impairment unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. § 404.1520a(d)(1).

In making his RFC findings, the ALJ stated that plaintiff retained no significant limitation of ability to understand, remember, or carry out simple to complex job instructions or tasks; use simple to complex judgment; appropriately interact with supervisors, coworkers, or the general public; and adapt to changes in a routine work setting (R. at 360). Thus, the ALJ,

10

after finding that plaintiff had left eye blindness and severe
mental impairments that impacted basic work activities,
subsequently stated that plaintiff did not have any limitation in
ability to perform basic work activities other than limitations
due to left eye blindness.

Defendant argues that the inconsistency between the findings
at step two and step three, the medical evidence, and the
findings at step four means that the "ALJ simply erred in
drafting his decision when he wrote that Plaintiff's mental
impairments in combination were severe" (Doc. 14 at 12-13).
However, the court will not speculate as to the basis for these
findings by the ALJ; furthermore, the court should not engage in
the task of weighing evidence in the first instance, Clifton v.
Chater, 79 F.3d 1007, 1009 (10th Cir. 1996); Neil v. Apfel, 1998
WL 568300 at *3 (10th Cir. Sept. 1, 1998), but should review the
Commissioner's decision only to determine whether his factual
findings are supported by substantial evidence and whether he
applied the correct legal standards.  Clifton, 79 F.3d at 1009.
The ALJ failed to clearly articulate the basis for his findings
regarding plaintiff's mental impairments or limitations at step
two, at step three, and when making his RFC findings.
Furthermore, an ALJ's decision should be evaluated based solely
on the reasons stated in the decision.  Robinson v. Barnhart, 366
F.3d 1078, 1084 (10th Cir. 2004).  A decision cannot be affirmed

on the basis of appellate counsel's post hoc rationalizations for
agency action.  <u>Knipe v. Heckler</u>, 755 F.2d 141, 149 n.16 (10th
Cir. 1985).  Therefore, the court will not try to ascertain or
determine why the ALJ's RFC findings and findings at step three
are inconsistent with his findings at step two.

In <u>Givens</u>, the court held as follows:

> A further error occurred when, having found
> Ms. Givens' depression "severe" at step two-a
> determination virtually compelled by the
> evidence-the ALJ failed to consider or
> include any mental limitation in his RFC
> analysis. See <u>Hargis v. Sullivan</u>, 945 F.2d
> 1482, 1488 (10th Cir.1991) ("[O]nce a mental
> impairment is considered to be severe, it
> must be included in the residual functional
> capacity assessment...."); 20 C.F.R. §
> 416.920a(d)(3).

<u>Givens</u>, 2007 WL 3046302 at *6.  Therefore, on remand, the ALJ
will need to review his findings regarding whether or not
plaintiff's mental impairments are severe.  If so, those
impairments must be included in the RFC assessment.

**V.  Did the ALJ err in his consideration of the onset date of
plaintiff's disability?**

The VA awarded plaintiff 100% disability effective December
8, 1997 due to service connection for dysthymic disorder and
major depression to include post-traumatic stress disorder (PTSD)
(R. at 582, 584).  The decision indicates that the effective date
of the determination is December 8, 1997, the date of receipt of
the veterans claim (R. at 587).  Therefore, the VA decision is

silent as to whether plaintiff was disabled for the relevant period in 1979 for purposes of disability insurance benefits. In a letter dated March 15, 2004, Dr. Shirley Alexander, a psychiatrist, and Nannette Emmett Godfrey, a LMSW clinical specialist, stated that plaintiff was disabled due to post-traumatic stress disorder, major depressive disorder, and generalized anxiety disorder. They believe plaintiff's condition was a direct result of his Vietnam military experience. Therefore, he has been "classified as 100% disabled and unemployable since 1974" (R. at 588).

Although another agency's determination of disability is not binding on the Social Security Administration, it is evidence that the ALJ must consider and explain why he did not find it persuasive. Grogan v. Barnhart, 399 F.3d 1257, 1262-1263 (10th Cir. 2005). The ALJ did consider the VA determination, but noted that the 100% disability rating was "only as of December 1997" (R. at 359). However, the ALJ did not mention the fact that the effective date of the disability determination by the VA, December 8, 1997, was based on the date of receipt of the veteran's claim (R. at 587). Therefore, the VA disability decision does not address whether or not plaintiff was disabled at any time prior to December 8, 1997.

The undisputed medical evidence in the case is that plaintiff was disabled as of December 8, 1997. However, the

13

issue before the court is whether plaintiff was disabled, and therefore entitled to disability insurance benefits, from January 1, 1979 through September 30, 1979.

As this court stated in Terrezas v. Barnhart, Case No. 03-1164-MLB, Doc. 15 at 7-11 (D. Kan. May 5, 2004), Social Security Ruling (SSR) 83-20 sets forth the policy and describes the relevant evidence to be considered when establishing the onset date of disability. 1983 WL 31249 at *1. Once published, Social Security Rulings are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1). Inexplicably, it is not mentioned by the ALJ in his decision. Factors relevant to the determination of disability onset include the individual's allegations as to when the disability began, the work history, and the medical evidence. SSR 83-20, 1983 WL 31249 at *1; Reid v. Chater, 71 F.3d 372, 373-374 (10th Cir. 1995). These factors are often evaluated together to arrive at the onset date. However, the individual's allegation or the date of work stoppage is significant in determining onset only if it is consistent with the severity of the condition(s) shown by the medical evidence. SSR 83-20, 1983 WL 31249 at *1. In determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available. 1983 WL 31249 at *3.

With slowly progressing impairments, it is sometimes

impossible to obtain medical evidence establishing the precise
date an impairment became disabling.  Determining the proper
onset date can be particularly difficult when adequate medical
records are not available.  In such cases, it will be necessary
to infer the onset date.  1983 WL 31249 at *2.  In some cases, it
may be possible, based on the medical evidence to reasonably
infer that the onset of a disabling impairment occurred some time
prior to the date of the first recorded medical examination.
1983 WL 31249 at *3.  Ruling 83-20 thus recognizes that it
sometimes may be necessary to infer the onset date.  The ALJ then
should call on the services of a medical advisor at the hearing.
A medical advisor need be called only if the medical evidence of
onset is ambiguous.  <u>Reid</u>, 71 F.3d at 374.  When there is no
contemporaneous medical documentation, it should be asked if the
evidence is ambiguous regarding the possibility that the onset of
the disability occurred before the expiration of the claimant's
insured status.  If the medical evidence is ambiguous and a
retroactive inference is necessary, SSR 83-20 requires the ALJ to
call upon the services of a medical advisor to insure that the
determination of onset is based upon a legitimate medical basis.
<u>Blea v. Barnhart</u>, 466 F.3d 903, 911 (10th Cir. 2006);  <u>Grebenick
v. Chater</u>, 121 F.3d 1193, 1200-1201 (8th Cir. 1997).

When the medical evidence supports the existence of a
disability which was diagnosed only at a much later date, the ALJ

would not be substantially justified in relying on the date of diagnosis as the date of disability. Willbanks v. Secretary of Health & Human Services, 847 F.2d 301, 304 (6th Cir. 1988). The critical date is the onset of disability or impairment, not the date of diagnosis. Swanson v. Secretary of Health & Human Services, 763 F.2d 1061, 1065 (9th Cir. 1985). As was stated in the case of Morrison v. Bowen, 738 F. Supp. 1351, 1353 (D. Kan. 1987):

> Even if the plaintiff had not presented evidence regarding the onset date of her disability, the date chosen by the ALJ would still be reversed. The ALJ chose as the date of onset of plaintiff's mental illness the date the illness was initially diagnosed. The Court cannot accept this conclusion. Medicine simply is not practiced this way. A disease does not begin on the date it is first diagnosed.

A retrospective diagnosis without evidence of actual disability is insufficient. Flint v. Sullivan, 951 F.2d 264, 267 (10th Cir. 1991); Potter v. Secretary of Health & Human Services, 905 F.2d 1346, 1348-1349 (10th Cir. 1990). However, retrospective medical diagnoses uncorroborated by contemporaneous medical reports but corroborated by lay evidence relating back to the claimed period of disability can support a finding of past impairment. Likes v. Callahan, 112 F.3d 189, 190-91 (5th Cir. 1997); Jones v. Chater, 65 F.3d 102, 104 (8th Cir. 1995).

In this case, it is not at all clear from the medical record what is the onset date of plaintiff's disability. The VA found

16

that plaintiff was disabled as of December 8, 1997, the date of receipt of the claim, but the VA determination is silent as to whether the disability existed before that date.  The few medical record during the 1979 period provide little contemporaneous information on this question.  Dr. Alexander and Ms. Godfrey opine that plaintiff had been 100% disabled and unemployable since 1974 (R. at 588), but provide little or no explanation for this opinion.  Thus, the court finds that the medical record is ambiguous, and presents a situation where the ALJ would need to infer an onset date if plaintiff is disabled.  Therefore, on remand, if the plaintiff is found to be disabled at any time, then the ALJ shall follow the provisions of SSR 83-20 and call a medical advisor.  See Blea, 466 F.3d at 912.  However, if the ALJ makes a finding, supported by substantial evidence, that plaintiff was never disabled, or that he was disabled, but that polysubstance abuse was a contributing factor material to the finding of disability, then the ALJ will not need to follow the provisions of 83-20 to determine the onset date.

The court would also note that, according to SSR 96-5p:

> Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion.

17

1996 WL 374183 at *6.  Plaintiff had been under the care of Dr. Alexander and Ms. Godfrey since 2003 (R. at 588).  For this reason, the ALJ should give serious consideration to recontacting Dr. Alexander and Ms. Godfrey in order to clarify the reasons for their opinion that plaintiff was disabled and could not work since 1974.  If they are not recontacted, the ALJ shall explain the factual and legal basis for not recontacting them.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on January 10, 2008.

s/John Thomas Reid
JOHN THOMAS REID
United States Magistrate Judge